IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:06-CV-16-D(3)

| | |
|---|---|
| LARRY WHITE, )<br>    Plaintiff, )<br>)<br>    v. )<br>)<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>    Defendant. )<br>) | **MEMORANDUM &<br>RECOMMENDATION** |

This matter is before the Court upon the parties' cross-motions for Judgment on the Pleadings **[DE's 13-14 & 17-18]**. Plaintiff has also filed a response **[DE-21]** to Defendant's motion, and the time for Defendant to file a reply has expired. Accordingly, the matter is now ripe for adjudication. Pursuant to 28 U.S.C. 636(b)(1), this matter is before the undersigned for the entry of a Memorandum and Recommendation. The underlying action seeks judicial review of the final decision by Defendant denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI").

**Statement of the Case**

Plaintiff applied for DIB and SSI on July 17, 2002 (Tr. 66-68, 214-217). After his claims were denied at the initial and reconsideration levels, he requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* at 44-54. Following a hearing, the ALJ issued an unfavorable decision on October 15, 2003, in which he determined that Plaintiff was not

1

disabled. *Id.* at 228-240. On September 3, 2004 The Social Security Administration's Office of Hearings and Appeals ("Appeals Council") denied Plaintiff's request for review. *Id.* at 18, 33-36. No further appeals were filed by Plaintiff and therefore the October 15, 2003 decision became administratively final. *Id.* at 18.

Plaintiff filed new applications for DIB and SSI on November 21, 2003, alleging he became disabled on February 10, 2002. *Id.* at 18, 264-266, 397-399. After his claims were denied at the initial and reconsideration levels, Plaintiff requested a hearing before an ALJ. *Id.* at 241-242, 253, 402-405. Following the hearing, another unfavorable decision was entered by an ALJ on April 28, 2005. *Id.* at 16-27. The ALJ also declined to reopen Plaintiff's prior claims, finding that no new and material evidence had been presented to merit such a reopening. *Id.* at 18. Plaintiff's appeal was denied by the Appeals Council on March 17, 2006, making the April 28, 2005 decision final. *Id.* at 9-11, 18. The instant action was filed by Plaintiff on May 19, 2006 **[DE-3]**.

## **Standard of Review**

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...
> Id.

"Under the Social Security Act, [the Court] must uphold the factual findings of the

Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir.1966). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990).

## Analysis

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process which must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment

3

precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f). Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

In the instant action, the ALJ employed the five-step evaluation. First, the ALJ found that Plaintiff is no longer engaged in substantial gainful employment (Tr. 19). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "left ankle fracture, s/p open reduction internal fixation and mild mental retardation." *Id.* In completing step three, however, the ALJ determined that these impairments, either singly or in combination, were not severe enough to meet or medically equal any listed impairment. *Id.* at 20.

The ALJ then proceeded with step four of his analysis and determined that Plaintiff retained the residual functional capacity ("RFC") to perform medium work. *Id.* at 22. This RFC permits Plaintiff to perform the requirements of his past relevant work as a machine operator. *Id.* at 22-23. Accordingly, the ALJ determined that Plaintiff was not under a disability at any time through the date of his decision. *Id.* at 22. In making these determinations the ALJ cited substantial evidence. A summary of the medical record upon which the ALJ relied in reaching these conclusion follows.

On March 5, 2002, Dr. Lawrence N. Larabee, Jr. evaluated Plaintiff's complaints of intermittent ankle pain. *Id.* at 318-320, 327. Dr. Larabee diagnosed a bimalleolar ankle fracture with a ruptured ligament, which he surgically repaired two days later. *Id.* at 113-145, 323-324, 327. Plaintiff's post-surgical condition was evaluated by Dr. Larabee on March 22, 2002. *Id.* at 317. X-rays showed good anatomic positioning. *Id.* On July 30,

4

2002, Dr. Larabee reported that the results of a physical examination were normal and x-rays showed excellent anatomical alignment. *Id.* at 312. He also opined that Plaintiff "would be fine" returning to work, although Plaintiff "was reluctant to being back at work this soon." *Id.*

Plaintiff was examined by Physician's Assistant ("PA") Edward Warren on February 19, 2003. *Id.* at 378. He noted that Plaintiff's blood pressure measured 150/100 and his blood sugar level was 387. *Id.* However, Plaintiff had not taken his medication for these conditions in a week to ten days. *Id.*

Dr. Andrei Leong diagnosed Plaintiff with acid reflux disease on April 23, 2003. *Id.* at 325-326. A physical examination was normal, however. *Id.* Plaintiff's blood pressure measured 140/82. *Id.*

On April 30, 2003, Plaintiff was examined by Dr. E.C. Land. *Id.* at 175-177. Dr. Land diagnosed Plaintiff with: 1) history of left ankle fracture; 2) dysphagia; 3) poorly controlled hypertension; 4) diabetes mellitus; and 5) obesity. *Id.* at 177. A physical examination showed mild swelling in the ankles, but the range of motion in his joints and spine was normal. *Id.* at 176. Plaintiff had normal motor strength in his legs, feet, and hands. *Id.* His blood pressure measured 180/110. *Id.*

Plaintiff was examined by PA Warren again on June 4, 2003. *Id.* at 375. PA Warren reported that Plaintiff's blood pressure measured 140/90 and his blood sugar level was 455. *Id.* He also stated that Plaintiff was "very noncompliant with his medication." *Id.*

Edward English, a consulting psychologist, examined Plaintiff on August 25, 2003.

5

*Id.* at 331-333. Mr. English diagnosed Plaintiff with mild mental retardation. *Id.* at 333. Achievement tests measured Plaintiff's reading skills at the first grade level, his spelling at the fourth grade level, and his arithmetic skills at the fifth grade level. *Id.* at 332. However, Mr. English noted that Plaintiff was capable of driving an automobile and responding adequately to questions. *Id.* at 333. He also observed that prior to 2002 Plaintiff worked for approximately 14 years at a meat packing company in Smithfield, Virginia. *Id.* at 331, 333. Plaintiff's appearance was generally appropriate. *Id.* Ultimately, Mr. English determined that Plaintiff "would seem to have the basic capabilities to manage his benefits." *Id.* at 333.

On August 27, 2003, Plaintiff was examined by PA Warren. *Id.* at 372. Plaintiff's blood pressure was 160/90 and his blood sugar level was 300. *Id.* The examination was essentially unremarkable. *Id.* During this examination, PA Warren stated that Plaintiff "is always going and doing." *Id.* When Plaintiff was examined again on November 19, 2003, PA Warren again asserted that Plaintiff was very noncompliant in taking his prescribed medications. *Id.* at 370.

Plaintiff was examined by Dr. Land again on February 18, 2004. *Id.* at 334-336. Dr. Land diagnosed Plaintiff with: 1) severe gastroesophageal reflux; 2) diabetes mellitus; 3) degenerative arthritis; and 4) a history of carpal tunnel syndrome. *Id.* at 336. Dr. Land noted that Plaintiff had a very mild limp favoring the left leg. *Id.* at 335. Plaintiff's blood pressure was 120/90 and there were no signs of swelling in his extremities. *Id.*

Dr. Robert Gardner reviewed Plaintiff's medical records and approved an assessment of Plaintiff's RFC on February 23, 2004. *Id.* at 337-344. Dr. Gardner concluded that

6

Plaintiff had the RFC to: 1) occasionally lift and/or carry 50 pounds; 2) frequently lift and/or carry 25 pounds; 3) stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; 4) sit (with normal breaks) for a total of about 6 hours in a 8-hour workday; and 5) push and/or pull with no limitations other then those already noted for lifting and carrying. *Id.* at 338. No postural, manipulative, visual, communicative and environmental limitations were noted. *Id.* at 339-341. On May 14, 2004, Dr. Edward Woods evaluated the medical record and affirmed Dr. Gardner's opinion. *Id.* at 345.

On April 15, 2004, Dr. Elizabeth Anton reviewed the medical evidence and completed a psychiatric review form. *Id.* at 352-365. Dr. Anton determined that Plaintiff satisfied the diagnostic criteria for mild mental retardation. *Id.* at 356. She then asserted that this condition produced the following functional limitations: 1) moderate restriction of activities of daily living; 2) moderate difficulties in maintaining social functioning; and 3) moderate difficulties in maintaining concentration, persistence or pace. *Id.* at 362. No repeated episodes of decompensation of extended duration were observed. *Id.* According to Dr. Anton, "there is no evidence of deficits in [Plaintiff's] adaptive functioning." *Id.* at 364. Ultimately, Dr. Anton concluded that Plaintiff could perform simple routine repetitive tasks ("SRRT"). *Id.* This conclusion was supported by the fact Plaintiff previously held a job which required the performance of such tasks. *Id.* On May 13, 2004, Dr. W.W. Albertson affirmed Dr. Anton's assessment. *Id.* at 347. In doing so, Dr. Albertson noted that Plaintiff had a steady work history over a 15 year relevant work period. *Id.* Dr. Albertson observed that Plaintiff: 1) drives and navigates independently; 2) has adequate speech; and 3) manages

7

adaptive function well. *Id.* Likewise, Dr. Albertson noted that Plaintiff's adaptive functioning exceeds his recorded IQ's. *Id.* Based on this assessment, Dr. Albertson agreed that Plaintiff could perform SRRT. *Id.*

Plaintiff was examined by PA Warren on April 24, 2004. *Id.* at 367. His blood sugar level was measured at 332. *Id.* PA Warren observed that Plaintiff did not follow the prescribed diabetic diet. *Id.* Diabetic education classes and further laboratory tests were recommended for Plaintiff. *Id.* On September 29, 2004, progress notes indicated that Plaintiff continued to be noncompliant and the results of a physical examination were "unremarkable." *Id.* at 388.

Mr. English again examined Plaintiff on January 31, 2005. *Id.* at 393-396. Ultimately, Mr. English affirmed his original assessment that Plaintiff was mildly mentally retarded but was capable of managing his benefits in his own best interest. *Id.* at 395.

Based on this medical record, the ALJ made the following observations in his decision:

> Although [Plaintiff] alleges severe hypertension, diabetes mellitus, gastroesophageal reflux disease and carpal tunnel syndrome, treatment records fail to support any work-related limitations resulting from these impairments. Hypertension and diabetes mellitus are subject to adequate control with medication without any significant side-effects. Moreover, these are no indications of complications or damage to vital organs (i.e. heart, kidney, liver, brain, eyes, etc.) as a result of elevated blood pressure or elevated blood sugar. In addition, [Plaintiff] also receives some relief of heartburn and dysphagia with medication. Moreover, while he has had carpal tunnel surgery in the past, he has good grip strength on the right and left (Tr. 325-330, 334-336, 366-386, 388-392) . . . As hypertension, diabetes mellitus, gastroesophageal reflux disease and carpal tunnel syndrome fail to impose significant limits on [Plaintiff's] ability to perform work, I find that these are nonsevere

8

impairments . . .
*Id.* at 19-20.

Next, the ALJ assessed whether Plaintiff had any other impairments which met or equaled a listing. *Id.* at 20. Specifically, the ALJ evaluated Plaintiff's impairments pertaining to: 1) the major dysfunction of any joints; and 2) mental retardation. With regard to Plaintiff's left ankle fracture, the ALJ noted "[Plaintiff] reached maximum medical improvement . . . [t]here are no indications of chronic joint pain and stiffness, narrowing, bony destruction or ankylosis resulting in inability to ambulate effectively as defined in section 1.02A of the listings." *Id.* at 20, 309-324, 334-336. The ALJ also observed that "throughout the record, [Plaintiff] has few complaints regarding his ankles." *Id.* at 21.

In assessing the listing for mental retardation, the ALJ concluded:

> While the evidence further reflects valid IQ scores within the mild mental retardation range, there are no indications of significant deficits in adaptive functioning before age 22 as set forth in section 12.05C of the listings. [Plaintiff] graduated from high school and had special education classes for reading and mathematics from grades 10 through 12. Moreover, he passed an oral examination and has a valid driver's license. In addition, he is able to shop for himself and prepare small meals. There is no evidence to support inability to communicate, ask questions or request assistance [Tr. 331-333, 393-395].
> *Id.* at 20-21.

In making these determinations, the ALJ concluded that "while the medical evidence establishes the presence of underlying impairments capable of causing the symptoms alleged, having fully evaluated the intensity, persistence and functionally limiting effects of his symptoms, I find that the [Plaintiff's] allegations are not entirely credible as the evidence fails to support limitations of the severity alleged." *Id.* at 21.

9

The ALJ then evaluated Plaitniff's RFC. In making this assessment, the ALJ considered all of Plaintiff's symptoms, including pain, and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence. *Id.* at 20. After weighing this evidence, the ALJ stated:

> [Plaintiff] has the residual functional capacity to perform medium work. Specifically, the [Plaintiff] can lift and/or carry 50 pounds; stand and walk for 6 hours in an 8-hour workday and sit for about 6 hours in an 8-hour workday. Cognitively, the [Plaintiff] can perform unskilled work requiring the ability to understand, remember and carry out simple instructions and interact appropriately within the work environment. Normal breaks are sufficient.
> *Id.* at 23.

In addition, the ALJ determined that "[t]he evidence establishes that the [Plaintiff] has past relevant work as a machine operator where he operated the same machine for 15 years . . . [t]here is no evidence to support that the [Plaintiff] was required to perform tasks inconsistent with his residual functional capacity." *Id.* at 22. Accordingly, the ALJ found that Plaintiff is able to perform the functions of his past relevant work and therefore is not disabled. *Id.*

Based on the forgoing record, the Court hereby finds that there was substantial evidence to support the ALJ's conclusions. The undersigned shall now address Plaintiff's specific assignments of error.

## Assignments of Error

### I. Substantial Evidence Supports Defendant's Decision That Plaintiff Does Not Meet Listing 12.05C

Plaintiff contends that the ALJ erred in determining that Plaintiff did not have a mental disorder that met or equaled the medical severity contained in Listing 12.05C. Listing

12.05 States:

> Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifesting during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . .

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05.

The burden of demonstrating that his impairments satisfy this listing is upon Plaintiff. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). Defendant argues that Plaintiff has failed to meet the threshold requirement of Listing 12.05 that deficits in adaptive functioning manifest prior to age 22.

Listing 12.05 "makes it clear that mental retardation is a life-long, and not acquired, disability . . .[t]hus, to qualify as disabled under this listing, a plaintiff must first demonstrate that he has had deficits in adaptive functioning that began during childhood." Smith v. Barnhart 2005 WL 823751, *4 (W.D.Va. 2005). See Luckey v. U.S. Dept. Of Health & Human Services, 890 F.2d 666, 668 (4th Cir. 1989). Thus, "[e]ven if the record clearly establishes that the plaintiff meets the requirements of section 12.05(C), a finding of mental retardation cannot be warranted without a finding that the plaintiff manifested deficits in adaptive function before age 22." Justice v. Barnhart, 431 F.Supp. 2d 617, 619 (W.D.Va. 2006)(citing Mendez v. Barnhart, 439 F.3d 360, 362 (7th Cir. 2006)).

However, the Fourth Circuit has also noted that:

> there are many possible reasons why an adult would not have obtained an IQ test early in life and the absence of an IQ test during the developmental years does not preclude a finding of mental retardation predating age 22 . . . in the absence of any evidence of a change in a claimant's intelligence functioning, it must be assumed that the claimant's IQ has remained relatively constant. Luckey, 890 at F.2d at 669(citing Branham v. Heckler, 775 F.2d 1271, 1274 (4th Cir. 1985)).

Notably, "[t]he Fourth Circuit has not held that low IQ alone proves manifestation of deficits in adaptive functioning before age 22 . . .[t]he cases . . . only hold that a finding of mental retardation is not precluded when an IQ test is not performed before age 22, rather than holding that manifestation of deficits in adaptive functioning before age 22 is firmly established by low IQ." Justice, 431 F.Supp. 2d at 619-620 (citing Luckey, 890 F.2d at 668). Nonetheless, "the Secretary may not rely upon previous work history to prove non-disability where the section 12.05(C) criteria are met: 'When a claimant for benefits satisfies the disability listings, benefits are due notwithstanding any prior efforts of the claimant to work despite the handicap.'" Luckey, 890 F.2d at 669(quoting Murphy v. Bowen, 810 F.2d 433, 438 (4th Cir. 1987)).

In analyzing Listing 12.05, the ALJ stated "while I acknowledge that the IQ scores are within the mild mental retardation range, I find no evidence to support significant deficits in adaptive functioning before age 22" (Tr. 21). The ALJ did not rely upon Plaintiff's 15 year work history in reaching this conclusion. Rather he observed that Plaintiff:

> graduated from high school and had special education classes for reading and mathematics from grades 10 through 12. Moreover, he passed an oral examination and has a valid driver's license. In addition, he is able to shop for

> himself and prepare small meals. There is no evidence to support inability to communicate, ask questions or request assistance.
> *Id.* at 20.

Contrary to Plaintiff's argument, this finding by the ALJ was supported by substantial evidence. Mr. English observed that Plaintiff was capable of driving an automobile, responding adequately to questions, and managing his benefits. *Id.* at 333, 395. Dr. Anton concluded that "there is no evidence of deficits in [Plaintiff's] adaptive functioning" and that Plaintiff could perform SRRT. *Id.* at 364. In addition, Dr. Anton stated that Plaintiff is able to cook and shop for himself. *Id.* Likewise, Dr. Albertson determined that Plaintiff could drive independently, had adequate speech, and could perform SRRT. *Id.* at 347. Dr. Albertson also noted that Plaintiff adaptive functioning exceeds his recorded IQ's. *Id.* Plaintiff testified that he has a high school diploma. *Id.* at 413. He also testified that he occasionally reads books and magazines. *Id.* at 440, 442-443.

In his argument, Plaintiff points to other evidence in the record which arguably could support the contention that he had deficits in adaptive functioning prior to age 22. Thus, Plaintiff essentially contends that the ALJ improperly weighed the evidence before him. However, this Court must uphold Defendant's factual findings if they are supported by substantial evidence. Although Plaintiff may disagree with the determinations made by the ALJ after weighing the relevant factors, the role of this Court is not to undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. Craig, 76 F.3d at 589. Because that is what Plaintiff requests this Court to do, this assignment of error is meritless.

## II. The ALJ Did Not Err In Determining Plaintiff's Residual Functional Capacity

Plaintiff also argues that there was not substantial evidence to support the ALJ's finding regarding Plaintiff's RFC. An individual's RFC is what that person can still do despite physical and mental impairments. 20 C.F.R. §§ 404.1545, 416.945(a). RFC is determined at the fourth step of the sequential evaluation process. As with the first assignment of error, Plaintiff's argument consists primarily of highlighting evidence the ALJ allegedly "failed" to consider. Once again, Plaintiff asks this Court to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. The undersigned declines to do so.

The medical record relied upon by the ALJ has already been summarized. This medical record contained substantial evidence to support each of the ALJ's findings, including his assessment of Plaintiff's RFC. Accordingly, the Court finds that the ALJ properly considered all relevant evidence, including the evidence favorable to Plaintiff, weighed conflicting evidence, and fully explained the factual basis for his resolutions of conflicts in the evidence. Because there is substantial evidence in the record to support the ALJ's RFC determination, this assignment of error is without merit.

## Conclusion

For the reasons discussed above, it is HEREBY RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings **[DE-13]** be DENIED, Defendant's Motion for Judgment on the Pleadings **[DE-17]** be GRANTED, and the final decision by Defendant be AFFIRMED.

14

SO RECOMMENDED in Chambers at Raleigh, North Carolina this 30th day of April, 2007.

```
                          _____
                               William A. Webb
                             U.S. Magistrate Judge
```